## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

_____

**Claim Number**

_____2:05CV-906-WKW_____

**LETTA DILLARD GORMAN, INDIVIDUALLY
AND dba/ GORMAN & ASSOCIATES LLC,
AND ANNE WARR CURRY,**

**Plaintiffs,**

**vs.**

**WILLIAM JOHNSON, INDIVIDUALLY
AND AS DIRECTOR OF ALABAMA
DEPARTMENT OF ECONOMIC AND
COMMUNITY AFFAIRS (ADECA), AND
THE ALABAMA WORKFORCE
INVESTMENT BOARD**

**Defendants**

_____

**PLAINTIFFS' BRIEF**

_____

**Letta Dillard Gorman
Attorney for Plaintiffs
P.O. Box 231196
Montgomery, AL 36123
850-236-0911
FAX 850-236-0911
Lettag@comcast.net**

**TABLE OF CONTENTS**

<u>Page</u>

TABLE OF AUTHORITIES...............................................................1

STATEMENT OF THE ISSUES...................................…………2

    A.     Whether the federal court should deny

          Defendants' Motion To Dismiss for lack of subject matter

          jurisdiction?

    B.     Whether the federal court has subject matter

          Jurisdiction in this case based on diversity of

          citizenship of the parties and/or federal question?

    C.     Whether the federal courts should adopt the

          doctrine of applying federal joinder standards

          to test the legitimacy of plaintiffs' party alignments

          before denying jurisdiction?

    D.     Whether the non-diverse plaintiff's claim should be remanded to

          state court?

    E.     Whether this action should be remanded to state court?

STATEMENT OF THE CASE..................................................................3

    A.     STATEMENT OF THE FACTS.......................................3

    B.     STATEMENT OF STANDARD OR SCOPE OF

          REVIEW FOR EACH CONTENTION..............................11

SUMMARY OF ARGUMENT..................................................................16

ARGUMENT.................................................................17

CONCLUSION..............................................................22

CERTIFICATE OF SERVICE......................................................22

## TABLE OF AUTHORITIES

Civil Procedure Cases and Materials 260 (8th Ed. 2001),
John J. Cound et al..............................................................................17

Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4..........19

Chen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000)....................21

Exxon Mobil Corporation v. Allapattah Services Inc.,
125 S. Ct. 2611 (2005)............................................................................17

Federal Diversity Statute, 28 U.S.C. §1332......................2, 11, 12, 18, 20

Federal Practice and Procedure (3rd Ed. 1998) §1652.............................20

Federal Question Statute, 28 U.S.C. §1331........................................2, 11

Federal Rules of Civil Procedure, Rule 20.........................2, 11, 13, 16, 20

Federal Rules of Civil Procedure, Rule 21.........................2, 11, 15, 16, 20

Grupo Dataflux v. Atlas Global Group L.P., 832 F.2d 417
(7th Cir. 1987)..........................................................................................19

Newman-Green, Inc. v. Alfonzo-Larrain, 832 F.2d 417
(7th Cir. 1987)..........................................................................................19

State Farm Fire and Casulaty Co. v. Tashire, 386 U.S. 523 (1967).........18

Tapscott v. MS Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996).......21

U.S. Constitution (Article I and Article II)................................................21

Wormley v. Wormley, 21 U.S. 421, 451 (1823)........................................19

1

**STATEMENT OF THE ISSUES**

A.     Whether the federal court should deny Defendants' Motion To Dismiss
       for lack of subject matter jurisdiction?

B.     Whether the federal court has subject matter jurisdiction in this case
       based on diversity of citizenship of the parties and/or federal question
       pursuant to 28 U.S.C. §1331, 1332?

C.     Whether the federal courts should adopt the doctrine of applying
       federal joinder standards pursuant to Rules 20 and 21 of the Federal
       Rules of Civil Procedure to test the legitimacy of plaintiffs' party
       alignments before denying jurisdiction?

D.     Whether the non-diverse plaintiff's claim should be remanded to state
       court?

E.     Whether this action should be remanded to state court?

STATEMENT OF THE CASE

A.    Statement of the Facts

Plaintiff Letta Dillard Gorman is an individual residing in Panama City Beach, Florida. She is retired from Auburn University and has been a grantwriter for over thirty years. Plaintiff Gorman & Associates LLC (G&A) is a limited liability company organized in Montgomery County, Alabama, in 1998 but defunct since 2002 with 100% of its members residents of the State of Florida. Plaintiff Anne Warr Curry is an individual residing and working in Montgomery, Alabama.

Defendant William Johnson is the director, former assistance director, of the Alabama Department of Economic and Community Affairs headquartered in Montgomery, Alabama. The Alabama Department of Economic and Community Affairs (ADECA) is an agency of the State of Alabama and is headquartered in Montgomery, Alabama. The Alabama Workforce Investment Board (WIB) is an organization mandated by federal law and appointed by the Governor of the State of Alabama.

G&A is a for-profit woman-owned small business organized in the State of Alabama in 1998 and defunct since 2002. Members of the business are Letta Dillard Gorman (operating manager), John F. Gorman, and Christopher M. Gorman. G&A specialized in grant development and management, strategic planning, training, research, and program development.  G&A contracted with clients for grantwriting services for $15,000 retainer fee plus additional

3

compensation for successful applications, typically 10% to 20% equivalent of the funded amount, and additional grant application development at $3,000 per application. G&A provided professional services for various divisions of ADECA and subrecipients of ADECA in the past.

In the summer of 2002, G&A contacted Dr. Ken Hollingsworth, an employee of ADECA, and notified him of a grant opportunity with the U.S. Department of Labor for Workforce Investment Boards (WIB's) to develop and implement a five-year program for customized employment options for jobseekers with disabilities. G&A agreed to author the application if G&A could coordinate the program with two demonstration sites (Janice Capilouto Center for the Deaf and Easter Seals), facilitate the strategic planning, conduct the training, develop the media campaign, conduct the research of model programs and best practices, and administer the evaluation. Dr. Hollingsworth authorized G&A to develop the application for funding for the local WIB, chaired by Mr. Ab Conners. Ms. Gorman did, in fact, author the grant application in collaboration with G&A staff member, Ms. Stacy Larkin, and with limited input from Ms. Lynne Stokely from JCCD, and Mr. Larry Johnson and Mr. Willie Huff from Easter Seals. The completed application, proposing five years of funding for over $3.5 million to the State of Alabama, was approved by Mr. Conners and submitted to the U.S. Department of Labor in August 2002. Included in the application were explicit references to G&A as a for-profit business and the activities which G&A would

4

perform at the detailed cost in the budget. Additionally, the resumes of Ms.

Gorman, Ms. Larkin, and Ms. Anderson (consultant) were included to

demonstrate the capacity of the key personnel to perform the activities as they

related to working with jobseekers with disabilities, coordination of federal

grants, facilitation of strategic planning, conducting research and training, and

administering an effective evaluation. Two of the G&A members, three G&A staff

persons, and all of the G&A consultants either have a disability or have a family

member with a disability. No changes to the application developed by G&A were

made by ADECA or the WIB before submission.

At the end of September 2002, the local WIB was notified that the

application for funding was approved en toto. Dr. Hollingsworth notified G&A by

a telephone call to Ms. Gorman's cell phone of the award and instructed her to

notify the demonstration sites and initiate the grant activities. Ms. Gorman called

her staff and consultants, Mr. Johnson, Ms. Stokely, and Mr. Huff with the news.

From the onset of the delivery of services pursuant to the ACE grant, Ms.

Gorman insisted on the execution of a written contract with ADECA to reflect the

work G&A was providing in compliance with the grant work plan and budget.

She was told that the contract could be written retroactively as she was

accustomed to doing while engaging in contract activities in the past with ADECA

while employed at Auburn University. She had no reason to distrust this

assurance. With this understanding, G&A proceeded in the delivery of services.

5

G&A operated in good faith that the written contract was forthcoming and employees of ADECA referred to G&A as a contractor, included G&A in all ACE activities, and introduced G&A as the lead entity in the ACE program. At no time did any employee or agent of ADECA or the WIB instruct G&A to cease the performance of those activities.

As G&A continued to deliver services, invoices were submitted by Ms. Curry of G&A to Tammy Farmer of ADECA to reflect the costs of the services provided.  These invoices were then passed on to Melody Kooranghi of ADECA who directed Ms. Curry as to how to assemble the materials as required.  No one ever told Ms. Curry to stop submitting invoices for services performed.  The invoices totaled $105,233.27 as follows:

Invoice #1 in the amount of $75,547.97 for the period from September 30 through October 31.

Invoice #2 in the amount of $25,678 for the period from November 1 through November 30.

Invoice #3 in the amount of $21,028.19 for the period from December 1 through December 31.

Invoice #4 in the amount of $18,889.09 for the period from January 1 through January 31.

Invoice #5 in the amount of $17,810.70 for the period from February 1 through February 28.

6

Invoice #6 in the amount of $14.275.32 for the period from March 1 through March 31.

G&A expended its resources and incurred debt to carry out the activities of the ACE work plan while the Respondent enjoyed the benefit of the approximately $747,000 federal grant for the first year. Ms. Gorman and her staff were given the following reasons for the delay in executing the written contract:

1.    The contract could not be executed until the gubernatorial election took place. The election took place in early November.

2.    The contract could not be executed until the transition team was on board. The team was on board in December.

3.    The contract could not be executed until the new governor was on board (January 2003).

4.    The contract could not be executed until the DOL approved the sole sourcing procurement to G&A. This approval was obtained.

5.    The contract could not be executed until the new director was on board. Mr. John Harrison took office in January 2003.

6.    The contract was stuck in the legal department of ADECA.

7.    The contract could not be executed with a for-profit company. The program guidelines allowed contracting with a for-profit company.

8.    The contract could not be executed with a limited liability company.

7

9.   The Respondent staff falsely reported to the DOL that G&A would
     not negotiate a contract without profit. G&A and one of the other
     nonprofit subrecipients offered to execute the G&A portion of the
     program through a nonprofit entity.

10.  The contract could not be executed because G&A would not
     negotiate and execute a contract (false).

The other two subrecipients' written contracts were executed in January
of 2003. The start date was retroactive to October 1, 2002. At least one of the
other subrecipients invoiced ADECA for services performed prior to the execution
of the written contract, although both of them participated in team meetings and
planning activities prior to the execution of their contracts. While ADECA
witnesses testified that no payments can be made by ADECA except to those
who have fully executed contracts procured through the approved state policy
and procedure, there have been reported instances of just such payments.

G&A was still confident that ADECA would execute the written contract
retroactive to October 1, 2002. Into the second quarter of the program. Ms.
Gorman told ADECA that unless the written contract was executed and the
outstanding invoices paid, G&A would cease providing services . Ms. Gorman
spoke with Mr. John Harrison, the ADECA Director, and Mr. Bill Johnson, the
ADECA Assistant Director, concerning the past due invoices in January and
February of 2003.  Shortly thereafter, G&A received a letter indicating that

8

ADECA would not pay the invoices and would be either performing the grant activities in-house or through other partners (i.e. ADRS). G&A notified the Respondent that services would cease effective March 31, 2003.

G&A requested an explanation of why the invoices were not going to be paid.  The Respondent gave two reasons:

1.    There was no written contract between G&A and ADECA and ADECA had no mechanism for payment of the outstanding invoices.

2.    They did not believe that G&A had performed any activities in support of the grant. In essence, they claimed that G&A had filed fraudulent invoices for payment.

G&A submitted a claim to the Alabama Board of Adjustment on to resolve the issue.  An expedited administrative hearing on the matter was held on September 18 during which the Director of the Respondent agency, Mr. John Harrison, concurred that G&A is entitled to be paid for the services delivered while the Assistant Director, Mr. Bill Johnson, relying on advice from staff members at ADECA and others, expressed his position that G&A was not entitled to be paid. ADECA entered no exhibits as evidence and called for no additional testimony than those witnesses called by G&A.  Further, no cross examination of the principal witness for the Claimant, Ms. Letta Dillard Gorman, was proferred. In lieu of any defense to the claim submitted by G&A, ADECA attempted unsuccessfully to discredit Ms. Gorman through employee's unsubstantiated

9

testimony of alleged wrongdoing on unrelated matters. On the other hand, G&A admitted 52 exhibits as documentation and called over twenty witnesses.

At the hearing, the Administrative Judge ordered the parties to submit briefs in support of their positions and, since ADECA provided a court reporter for the hearing, required the briefs to cite the transcript.  However, due to the economic insolvency of Gorman & Associates LLC, the Court agreed to allow G&A to use the Court's courtesy copy which was promised by ADECA. A problem arose when ADECA decided to withhold the courtesy copy until the submission of their brief. The Court ordered ADECA to provide the brief on October 17 or risk having their brief struck, but they did not do so in blatant disregard for this Court. In order to avoid further continuance of this matter which would further damage G&A, G&A has prepared and submitted this brief well within the additional two weeks granted by the administrative judge in order to expedite a ruling.

The Administrative judge found for G&A and ordered ADECA to pay the debt in full. ADECA continued to be funded pursuant to the original grant application authored by G&A, but no written contract was ever executed for G&A to perform the activities outlined in the original application.  G&A did not, therefore, receive the almost $1.5 million funds as it has been promised. Further, no other contracts or grants were awarded to G&A or Letta Gorman. Further, in addition to the accusations proferred by Bill Johnson and other ADECA

10

employees, comments and testimony were spoken to discredit G&A and Letta Gorman.

In December of 2005, G&A, Letta Gorman, and Anne Curry filed this instance lawsuit in federal court to be compensated for the damages they suffered.  G&A claimed breach of contract, libel, slander, defamation of character, and intentional interference with business relations. Letta Gorman claimed breach of contract, libel, slander, defamation of character, intentional infliction of emotional distress, and intentional interference with business relations. Anne Curry claimed libel, slander, defamation of character, and intentional infliction of emotional distress.

Counsel for the defendants filed a Motion to Dismiss for lack of subject matter jurisdiction due to the lack of complete diversity between the plaintiffs and the defendants.

B.    Statement of Standard or Scope of Review for Each Contention

The standard or scope of review for subject matter jurisdiction is the diversity statute (U.S.C. Title 28 § 1332), the federal question statute (U.S.C. Title 28 § 1331), the doctrine of procedural misjoinder, and Rules 20 and 21 of the Federal Rules of Civil Procedure.

U.S.C. Title 28 § 1331. Federal question

The district courts shall have original jurisdiction of all civil actions arising under

11

the Constitution, laws, or treaties of the United States.

U.S.C. Title 28 § 1332. Diversity of citizenship

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603 (a) of this title, as plaintiff and citizens of a State or of different States.

For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

(b) Except when express provision therefore is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the

12

defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

(c) For the purposes of this section and section 1441 of this title—

(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business; and

(2) the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

(d) The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

Rule 20. Permissive Joinder of Parties

13

(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons (and any vessel, cargo or other property subject to admiralty process in rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

(b) Separate Trials. The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom the party asserts no claim and who asserts no claim against the party, and may order separate trials or make other orders to prevent delay or prejudice.

14

Rule 21. Misjoinder and Non-Joinder of Parties

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

SUMMARY OF ARGUMENT

The plaintiffs maintain that the federal court should deny Defendants' Motion To Dismiss for lack of subject matter jurisdiction. The plaintiffs' position is based on both the basis of diversity of citizenship of the properly joined parties and because the suit deals with a federal question. The plaintiffs argue that the federal courts should adopt the doctrine of applying federal joinder standards to test the legitimacy of plaintiffs' party alignments before denying jurisdiction. If the court does not agree that diversity of citizenship justifies the subject matter jurisdiction, then the plaintiffs ask that the court consider the federal question justification as the basis for its original jurisdiction.

If the court does not agree that the federal question alone justifies the jurisdiction of this court, the Plaintiffs argue that the non-diverse plaintiff's claim should be remanded to state court pursuant to Rule 20 of the federal Rules of Civil Procedure. If the court does not agree that subject matter jurisdiction exists, the Plaintiffs argue that the entire matter should be remanded to state court pursuant to Rule 21 of the Federal Rules of Civil Procedure.

16

ARGUMENT

The historical purpose behind diversity jurisdiction is unclear, and its utility

has long been controversial. Two major theories occupy the consensus positions

as to the historical purpose of diversity jurisdiction, both originating with the

same general concept—that of local bias or prejudice. The theory most often

articulated is that the intent of diversity jurisdiction

was to protect out-of-state litigants from bias by state courts (JOHN J. COUND

ET AL., CIVIL PROCEDURE CASES AND MATERIALS 260 (8th ed. 2001).

The statutory requirements for diversity jurisdiction are well-known. First,

there must be complete diversity of citizenship, meaning that no plaintiff can be

a citizen of the same state as any defendant. Second, there must be a sufficient

amount in controversy (Exxon Mobil Corp. v. Allapattah Svcs., Inc., 125 S.Ct.

2611 (2005).

It is clear from the very identification of the parties in this action that the

plaintiffs are individuals and a small business who have a long-standing history of

successful dealings with state agencies.  The defendants are state agencies and

individuals in influential positions with those agencies. The potential for bias is

great and the essence of at least two of the claims lies in bias that has already

affected the plaintiffs personally and economically.

So, let us first examine the diversity of the joined parties as that is the

heart of the defendants' Motion To Dismiss.  Clearly all of the defendants are in

17

the State of Alabama. The plaintiffs' residency is a more complex issue. The first
plaintiff is Letta Gorman, who clearly is a legal resident of the State of Florida.
The second plaintiff is Gorman & Associates LLC, a limited liability company
organized in the State of Alabama in 1998, but defunct since 2002. All of the
members of the LLC are residents of the State of Florida so its principal place of
operation is in Florida. Due to the inactivity of G&A in the State of Alabama for
almost four years, and the residency of all of its members in the State of Florida,
the company should be regarded as a resident of Florida. The third plaintiff is
Anne Curry, who is a resident of the State of Alabama, and who seemingly
contaminates the diversity of citizenship basis for subject matter jurisdiction.
However, she may be misjoined in this matter. The primary claim in this action is
the breach of contract claim on behalf of Gorman & Associates LLC against
ADECA and the WIB. This is where the doctrine of procedural misjoinder comes
in. The plaintiffs argue that jurisdiction in this case lies in the federal court based
on complete diversity insofar as all of the properly joined parties are diverse.
More specifically, the plaintiffs argue that the party or parties spoiling complete
diversity should be disregarded because the claims that involve her do not arise
out of or relate to the same transaction or occurrence that is the subject of the
suit between the diverse parties. Absent these "misjoined" parties, the complete
diversity requirement would be satisfied. First, the requirement of complete
diversity comes from Congress, not Article III (State Farm Fire and Casualty Co.

18

v. Tashire, 386 U.S. 523 (1967).

Congress may authorize "minimal diversity" suits in federal court, and did so just this year with class actions (Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4).

Congress has not explicitly enacted a procedural misjoinder mechanism. Thus, under the so-called doctrine of "procedural misjoinder," federal courts are empowered to disregard any misjoined parties when assessing the citizenship of the parties for purposes of exercising jurisdiction (Wormley v. Wormley, 21 U.S. 421, 451 (1823);. The Supreme Court has recognized a limited theory of jurisdictional cure. Under this theory, incomplete diversity can be "cured" by the deletion of the spoiler later in the lawsuit. While originally developed in cases filed initially in federal court, it also applies in removed cases when a court learns later in the suit that complete diversity did not exist at the time of removal (Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 572-73 (2004).

In Newman-Green, Inc. v. Alfonzo-Larrain, 832 F.2d 417 (7th Cir. 1987) the Supreme Court reaffirmed the proper use of Rule 21 to drop from the action a party whose presence destroyed complete diversity. In *Newman-Green*, an Illinois corporation brought a breach of contract claim against a Venezuelan corporation, four Venezuelan citizens, and an American citizen domiciled in Venezuela. On appeal to the Seventh Circuit of a partial summary judgment, the appellate court found that the American defendant destroyed diversity, as he

19

was neither a foreign citizen nor a citizen of any state as required by 28 U.S.C. §1332(a)(2)-(3).79.

Rather than dismiss the case for lack of subject matter jurisdiction, however, the Seventh Circuit panel relied, *inter alia*, on Rule 21 as authority to grant plaintiff's motion to dismiss the nondiverse American defendant from the suit, thereby ensuring complete diversity. The en banc Seventh Circuit reversed the panel's decision, holding that only district courts have the authority to drop a dispensable nondiverse party, and that Rule 21 does not extend that power to appellate courts. Courts frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a nondiverse party if the party's presence in the action is not required under Rule 19. Federal Rule 20 provides for both the joinder of multiple plaintiffs and the joinder of multiple defendants. The standard for plaintiff joinder and defendant joinder is the same: (1) the joined claims must arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there must be a question of law or fact common to all of the joined claims. In both cases, party joinder is permissive rather than mandatory. FEDERAL PRACTICE & PROCEDURE, (3rd ed. 1998), §1652, at 397 (Rule 21 "permits the joinder of persons whose presence is procedurally convenient but is not regarded as essential to the court's complete disposition of any particular claim."). A plaintiff must meet the two-part test to join parties under Rule 20, but it remains the plaintiff's option whether to do so.

Procedural misjoinder seems to have originated with the Eleventh Circuit's opinion in <u>Tapscott v. MS Dealer Service Corporation,</u> 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds*, <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069 (11th Cir. 2000). The court asserted jurisdiction over the plaintiff claims against Lowe's, and remanded the claims against the remaining defendants to state court.

The amount in controversy clearly exceeds the $75,000 threshold as damages are estimated at a minimum of $93 million. That prong of the diversity test is easily satisfied (28 U.S.C. § 1332(a).

Now, let us examine the federal question basis as plaintiffs have a motion pending to amend the original pleading to include this basis for subject matter jurisdiction. That amendment relies on the breach of contract issue as being covered by the contract clause of the Constitution since the contract in question is a contract between the U.S. Department of Labor and an agency of the State of Alabama with the plaintiffs as subcontractors explicitly named in the original grant application. All of the funds to be paid to the plaintiffs pursuant to the contract in question are federal monies. Should this court accept that justification, the federal question will trigger the subject matter jurisdiction requirement and the diversity of the parties will not be an issue.

21

## CONCLUSION

In conclusion, the Plaintiffs maintain that this court has original jurisdiction of this matter based on both diversity of citizenship and a federal question. However, should this court not accept the basis for diversity of citizenship or the federal question, the Plaintiffs request that the non-diverse party's claims be remanded to the appropriate state court for hearing.  Should this court not agree to sever the non-diverse party and continue with this case, then the Plaintiffs request that the entire action be remanded to the appropriate state court for hearing.

Respectfully submitted on this the 10th of February, 2006.

/s/Letta Dillard Gorman
LETTA DILLARD GORMAN
Law Office of Letta Dillard Gorman
P.O. Box 231196
Montgomery, Alabama 36123
222 Palm Beach Drive
Panama City Beach, Fl 32413
(850) 236-0911

## CERTIFICATE OF SERVICE

I certify that on February 10, 2006 I electronically filed the foregoing with this Honorable Court for access by counsel for the named Defendants.

/s/Letta Dillard Gorman
LETTA DILLARD GORMAN

Honorable John P. Kavanagh, Jr.
Honorable H. William Wasden
Bowron, Latta &Wasden, P.C.
P.O. Box 16046
Mobile, Alabama 36616
(251) 344-5151
FAX: (251) 344-9696