UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LETTA DILLARD GORMAN, et al., | ) |
| | ) |
| Plaintiffs, | ) CASE NO. 2:05-CV-00906-WKW |
| | ) |
| vs. | ) |
| | ) |
| WILLIAM JOHNSON, et al., | ) |
| | ) |
| Defendants | ) |

**DEFENDANTS' REPLY AND SUPPLEMENTAL BRIEF IN SUPPORT
OF MOTION TO DISMISS**

COME NOW Defendants William Johnson, Individually and in his Official Capacity as Director of the Alabama Department of Economic and Community Affairs, the Alabama Department of Economic and Community Affairs ("ADECA"), and the Alabama Workforce Investment Board ("WIB"), submit this, their Reply and Supplemental Brief in Support of Motion to Dismiss due to lack of subject matter jurisdiction. (Doc. No. 20).

<u>SUMMARY OF ARGUMENT</u>

Defendants moved to dismiss this case on the most obvious grounds; the First Amended Complaint, on its face, demonstrated the absence of subject matter jurisdiction under 28 U.S.C. § 1332, because Alabama Plaintiffs were suing Alabama Defendants. Plaintiffs' filings subsequent to the Defendants' motion serve only to confuse the issues. It is now necessary to address the balance of the fatal flaws inherent in Plaintiffs' efforts.

Simply put, the Plaintiffs cannot sue the State of Alabama or its agencies or departments in Federal Court. The Eleventh Amendment to the United States Constitution bars actions against states in Federal Court absent a waiver by the state or congressional action allowing suit.

This bar extends to suits against state officials and employees (like Defendant William Johnson) sued for damages in their official capacities. No waiver from the State of Alabama is present -- indeed, such action is expressly prohibited by the Alabama Constitution -- nor is any act of Congress available to abrogate the State of Alabama's Eleventh Amendment immunity from suit.

There are also claims against William Johnson in his individual capacity. However, and again based on the face of the pleadings submitted by Plaintiffs, Mr. Johnson is entitled to immunity from suit under the doctrine of "State-agent immunity." Mr. Johnson is entitled to State-agent immunity protection because he was a state employee, an agent of the state, and acted at all times by exercising his judgment in executing work responsibilities. This issue is uniquely appropriate for summary disposition, as the existence of State-agent immunity is a question of law for the Court to decide.

ARGUMENT AND AUTHORITIES

1.   Structure of Defendants' Brief and Arguments Presented.

Defendants will first address the issues raised in Plaintiffs' "Opposition," which deals with subject matter jurisdiction. See Doc. Nos. 24 (Plaintiffs' "Objection to Motion to Dismiss"), and 25 (Supporting Brief). Plaintiffs have, in fact, offered a plausible scenario under which this Court can retain jurisdiction per 28 U.S.C. § 1332. Defendants would, at this juncture, encourage the Court to do so and then move to dispose of Plaintiffs' claims under the arguments addressed in the latter part of this filing; namely, (i) Eleventh Amendment immunity for Defendants ADECA, WIB and William Johnson, in his official capacity as the Director of ADECA, and (ii) State-agent immunity for the balance of claims against William Johnson, individually.

2. <u>Issues Concerning Subject Matter Jurisdiction.</u>

After Defendants' Motion was filed, Plaintiffs filed a "Motion to Amend/Correct Amended Complaint." (Doc. No. 22). Although styled as a "motion," this document appears to be a Second Amended Complaint wherein Plaintiffs attempt to assert "federal question" jurisdiction based on the fact that federal money funded the contract and underlying grant administered by ADECA. <u>See</u> "Motion to Amend/Correct Amended Complaint," at ¶ 3 ("This Court has jurisdiction since the contract in question involves 100% federal funds from the Department of Labor, thus meeting the federal question threshold."). (Doc. No. 22).

The Plaintiffs then filed their "Objection" to Defendants' Motion to Dismiss (Doc. No. 24), and later a Supporting Brief (Doc. No. 25). Plaintiffs' opposition to the Defendants' Motion to Dismiss is twofold: First, this Court has diversity jurisdiction, 28 U.S.C. § 1332, despite the presence of an Alabama Plaintiff and Alabama Defendants; second, in the alternative, the Court has federal question jurisdiction, 28 U.S.C. § 1331, based on allegations contained in the Second Amended Complaint. Defendants will address these contentions in reverse order.

**Federal Question Jurisdiction.** Federal question jurisdiction is triggered by the presence of claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; <u>see also</u> *Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F.2d 419, 422 (11th Cir.), <u>cert. denied</u>, 459 U.S. 970 (1982), where the Eleventh Circuit explained the standards for assessing whether federal question jurisdiction is present:

> For a case to arise under federal law, a right or immunity created by that law must be an essential element of the plaintiff's claim; the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another.

The fact that the underlying contract and grant administered by ADECA was funded by federal money (the Department of Labor, per Plaintiffs' Second Amended Complaint), does not establish federal question jurisdiction. See *Weeks Constr., Inc. v. Oglala Sioux Housing Authority*, 797 F.2d 668 (8th Cir. 1986); *Becker v. Beame*, 454 F.Supp. 867 (S.D.N.Y. 1978). In *Weeks Construction*, the United States Department of Housing and Urban Development (HUD) provided funds for the construction of homes by a Housing Authority for an Indian tribe. A contractor sued the Housing Authority and asserted federal question jurisdiction. The Eighth Circuit rejected this position, holding instead that the claims involved breach of contract matters governed by local law: "[The contractor's] action for money damages may have a connection with activities undertaken as part of functions authorized by federal law, but did not itself arise under federal law and requires only the interpretation and application of contract principles under local law." *Weeks Constr., Inc.*, 797 F.2d at 675 n. 8.

Likewise, in *Becker v. Beame, supra*, the court held that federal question jurisdiction did not exist for another breach of contract claim involving federally funded activities (child care funded by the United States Department of Health, Education and Welfare or "HEW"). Plaintiff was a non-profit entity which contracted with the City of New York to provide child-care services funded by HEW. Suit was filed against the City and certain officials after payment was not received for services provided. The court denied plaintiff's request to assert federal question jurisdiction based solely on the use of federal money to fund the program at issue: "[P]laintiff's complaint presents a simple 'state-created' claim for breach of contract which fails to present a pivotal question of federal law." *Becker*, 454 F.Supp. at 870.

Such result is applicable with equal force in the instant case. The presence of federal money to fund the underlying contract and grant administered by ADECA does not trigger a

claim "arising under" the Constitution, laws or treaties of the United States. Federal question jurisdiction, 28 U.S.C. § 1331, is thus not appropriate.

**Diversity Jurisdiction.** The alternative basis for this Court's exercise of subject matter jurisdiction is 28 U.S.C. § 1332, "diversity jurisdiction." The contours of this grant of federal judicial authority were discussed by Judge Thompson in *McDonald v. Equitable Life Ins. of Iowa*, 13 F.Supp.2d 1279 (M.D. Ala. 1998):

> There are a number of basic legal principles regarding diversity-of-citizenship jurisdiction: that § 1332 grants federal courts jurisdiction over cases between "citizens of different states"; that the party seeking diversity jurisdiction has the burden of establishing jurisdiction by a preponderance of the evidence, *Blakemore v. Missouri Pac. R.R. Co.*, 789 F.2d 616, 618 (8th Cir.1986); that diversity is determined when the suit is instituted, not when the cause of action arose, *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113-14 n. 1, 1 L.Ed.2d 1205 (1957); and that, for diversity jurisdiction to exist, there must be "complete diversity," that is, each defendant must be a citizen of a state different from that of each plaintiff. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978); *Palmer v. Hospital Auth. of Randolph Cty.*, 22 F.3d 1559, 1564 (11th Cir.1994).

Id., at 1280.

Applying these principles to the case at bar demonstrates that, at the time suit was filed there was at least one Alabama Plaintiff (Anne Warr Curry), suing multiple Alabama Defendants. See Plaintiffs' Second Amended Complaint (Doc. No. 22), at ¶ 7 ("Plaintiff Anne Warr Curry is an individual residing and working in Montgomery, Alabama"); ¶ ¶ 8 – 12 (ADECA, WIB are Alabama agencies in Montgomery, Alabama and William Johnson is the Director of ADECA in Montgomery).[1]

---

[1] Plaintiff Gorman & Associates, L.L.C., is stated to be an Alabama limited liability company "with 100% of its members residents of the State of Florida." Plaintiffs' Brief in Support, at p. 25 (Doc. No. 25). Assuming this to be correct, Gorman & Associates, L.L.C. would be deemed a "citizen" of Florida for diversity jurisdiction purposes. See *Rolling Greens, MHP, L.P. v.*

5

Plaintiffs recognize the presence of Ms. Curry ostensibly deprives the Court of subject matter jurisdiction. See Plaintiffs' Brief in Support, at p. 25 ("[S]hould this court not accept the basis for diversity of citizenship or the federal question, the Plaintiffs request that the non-diverse party's claims be remanded to the appropriate state court for hearing.") (Doc. No. 25). First, Defendants note that "remand" of all or part of Plaintiffs' case is legally unavailable; this case was never removed from state court under the auspices of 28 U.S.C. § 1441, *et seq.*, so the procedural mechanism for a remand is not present. Second, if the Court determines that it does not have subject matter jurisdiction over the claims of a non-diverse plaintiff, its only option at that point is to dismiss her claims (albeit without prejudice). See *Buerger v. Southwestern Bell Tel. Co.*, 982 F.Supp. 1253, 1256 (E.D. Tex. 1997) (Once a court determines that it does not have jurisdiction, it "has no power to do anything but dismiss the case.").

As pointed out in the Plaintiffs' "Opposition" and Supporting Brief, this Court is vested with the discretion under Rule 21, Fed. R. Civ. P., to dismiss a party to preserve its jurisdiction

---

*Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state in which a member of the company is also a citizen.").

It should be noted that Gorman & Associates, L.L.C., is participating in Chapter 7 bankruptcy proceedings in the Middle District of Alabama. *In re Gorman & Associates, L.L.C.*, Case No. 05-33654 (Bankr. M.D. Ala.).

Further, both the business entity Plaintiff (Gorman & Associates, L.L.C.) and the individual Plaintiffs (Anne Warr Curry and Letta Dillard Gorman), have been criminally charged/indicted in the United States District Court for the Middle District of Alabama in connection with work on a different federally funded grant, to wit the "Appalachian Alabama Mentoring Entrepreneurial Network for Women," administered through Auburn University-Montgomery. See *United States of America v. Letta Gorman and Ann Curry*, 2:04-cr-100 (M.D. Ala.) (superseding six-count felony indictment at Doc. No. 66); *United States of America v. Gorman & Associates, L.L.C.*, 2:05-cr-250 (M.D. Ala.) (Information filed at Doc. No. 1). Based upon information and belief, pre-trial diversionary agreements have recently been entered into with defendants in both of these criminal cases.

over a case. See *Ferry v. Bekum America Corp.*, 185 F.Supp.2d 1285, 1288 (M.D. Fla. 2002), where the court discussed the application of this principle:

> The Supreme Court has held that while the existence of federal jurisdiction normally depends on the facts as they exist when the complaint is filed, there are exceptions to this principle, including Rule 21 of the Federal Rules of Civil Procedure. *Newman-Green [Inc. v. Alfonzo-Larrain, 490 U.S. 826*, 830, 109 S.Ct. 2218 (1998)]. Rule 21 provides:
>
>> Misjoinder of parties is not grounds for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.
>
> Fed. R. Civ. P. 21. The Supreme Court has held that courts may dismiss a dispensable nondiverse party to retain jurisdiction. *See Newman-Green*, 490 U.S. at 832-37, 109 S.Ct. 2218 (holding that court of appeals could dismiss nondiverse dispensable defendant); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860-61 (11th Cir.2000) (dismissing defendant).

Dismissal to preserve jurisdiction is appropriate in cases involving non-diverse defendants, *Anderson v. Moorer*, 372 F.2d 747, 750 n. 4 (5th Cir. 1967), as well as a non-diverse plaintiff. See *LeBlanc v. Cleveland*, 248 F.3d 95, 99-100 (2nd Cir. 2001) (granting request of plaintiff to dismiss non-diverse co-plaintiff in order to sustain diversity jurisdiction).

In the instant case, the Plaintiffs have invited this Court to dismiss the non-diverse Plaintiff, Anne Warr Curry, in order to maintain federal jurisdiction. The Court should accept this invitation and dismiss Ms. Curry's claims. Alternatively, as the Plaintiffs remain the masters of their case, Plaintiff Anne Warr Curry can voluntarily dismiss her claims. Under either scenario, this Court will then have jurisdiction to adjudicate the balance of the claims.

3. <u>Claims Against ADECA, WIB and William Johnson Are Barred Under Eleventh Amendment.</u>

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of a Foreign State." U.S. CONST. amend. XI. This provision has been consistently interpreted to as prohibiting an unconsenting state from being sued in federal court by one of its own citizens, as well as citizens from another state. *Edelman v. Jordan*, 415 U.S. 651 (1974); *Hans v. Louisiana*, 134 U.S. 1 (1890).

There are two exceptions to Eleventh Amendment immunity: First, Congress can abrogate a state's immunity when it acts pursuant to the Fourteenth Amendment (not applicable here). Second, a state may waive its immunity expressly through legislative enactment. The State of Alabama has not waived its immunity. See *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990) (discussing Alabama's Constitutional grant of sovereign immunity, ALA. CONST. art. I, § 14); accord *Larkins v. Department of Mental Health & Mental Retardation*, 806 So.2d 358, 363 (Ala. 2001) ("The State is immune from suit, and its immunity cannot be waived by the Legislature or by any other State authority.").

Plaintiffs' claims against ADECA and WIB based on the State's Eleventh Amendment immunity should be granted as a matter of course. See *Robertson v. ADECA*, 902 F.Supp. 1473, 1485 (M.D. Ala. 1995) (DeMent, J.) (extending Eleventh amendment immunity to ADECA and its employees in their official capacities).

Turning to the Plaintiffs' claims against William Johnson, in his official capacity as director of ADECA, lawsuits against a state official in his or her "official" capacity are

considered suits against the state for purposes of Eleventh Amendment immunity when "the state is the real, substantial party in interest." *Carr v. City of Florence*, 916 F.2d at 1524 (internal citations omitted). In the instant case, it is clear that the suit against William Johnson, in his official capacity, is in fact a suit against the State. See *Carr*, *supra* (extending Eleventh Amendment immunity to ADECA's Director; case involved claims of intentional infliction of emotional distress, discrimination, free speech violations, etc.). Moreover, there is no allegation that Mr. Johnson's alleged actions were taken for some personal motive and/or to further some personal interest. His activities vis-à-vis Gorman & Associates and the administration of the "contract" were all done as part and parcel of his duties with ADECA. See Second Amended Complaint, at ¶ 12 ("The acts by the defendant William Johnson charged in this Complaint were authorized, ordered or done by the defendant agency or the defendants' officers, agents, employees, or representatives while they were actively engaged in the management of the defendants' businesses." ) (Doc. No. 22).

Plaintiffs cannot sue ADECA, WIB or William Johnson, in his official capacity, in Federal Court. Defendants ADECA and WIB are due to be dismissed; all claims against William Johnson, in his official capacity as the Director of ADECA, must be dismissed, as well.

4. William Johnson Is Entitled To The Protections Of State-Agent Immunity For All Claims Against Him In His Individual Capacity.

While claims against Mr. Johnson in his *individual capacity*, are not subject to the bar of the Eleventh Amendment, *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir.1993), he is nevertheless entitled to immunity from suit under Alabama's sovereign immunity doctrine as applied through "state-agent" immunity law. See, e.g., *Lanaster v. Monroe County, Alabama*, 116 F.3d 1419 (11th Cir. 1997) (State law official-capacity claims against employees addressed

and barred under Eleventh Amendment; state law individual-capacity claims against employees addressed under ALA. CONST. art. I, § 14.).

Article I, Section 14 of the Alabama Constitution provides: "That the State of Alabama shall never be made a defendant in any court of law or equity." Under § 14, "the state and its agencies have absolute immunity from suit in any court." *Phillips v. Rogers*, 555 So.2d 81, 83 (Ala. 1989). Such immunity extends to State officers and employees in their official capacities. *Alabama A & M Univ. v. Jones*, 895 So.2d 867, 872 (Ala. 2004) (§ 14 prohibits not only suit against state, "but that this cannot be indirectly accomplished by suing its officers or agents in their official capacity [.]"); see also *Brogdon v. ADECA*, 864 F.Supp. 1161, 1164 (M.D. ALA. 1994) (Thompson, J.) ("As the Supreme Court has explained, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . It is not a suit against the official personally for the real party in interest is the entity.") (internal citations omitted).

With respect to individual capacity claims, immunity is not absolute but must be evaluated against the question of whether the suit is, in effect, a suit against the state. "Whether immunity serves as a defense to an action against a State officer or employee sued in his individual capacity depends upon the degree to which the action involves a State interest." *Ex Parte* Davis, -- So.2d --, 2005 WL 3082778, at *2 (Ala. 11/18/2005).

The *Davis* Court referred to the state-agent immunity doctrine set out in *Ex Parte Cranman*, 792 So.2d 392 (Ala. 2000), in assessing the "state interest" requirement for individual immunity. Id., at *3. In *Cranman* (as later adopted in *Ex parte Butts*, 775 So.2d 173 (Ala.2000)), the Alabama Supreme Court clarified the immunity provided to State "agents" from suit in their individual capacity:

10

A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's:

(1) formulating plans, policies, or designs; or

(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:

 (a) making administrative adjudications;
 (b) allocating resources;
 (c) negotiating contracts;
 (d) hiring, firing, transferring, assigning, or supervising personnel; or

(3) discharging duties imposed on a department or agency by statute, rule, or regulation insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner[.]

\* \* \* \*

Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte Cranman*, 792 So.2d at 405 (emphasis in original).[2]

---

[2] Decisions before *Ex Parte Davis*, -- So.2d --, 2005 WL 3082778 (Ala. 11/18/2005), considered a variety of factors in passing on the "state interest" issue necessary to trigger immunity against individual-capacity claims. See *Alabama Dept. of Environmental Management v. Town of Lowndesboro*, -- So.2d --, 2005 WL 791239, at *7-8 (Ala. Civ. App. 4/8/2005), where the Court listed several factors to consider including: (1) whether a favorable result for the plaintiff would directly affect a contract or property right of the State; (2) the nature of the action and the relief sought; and, (3) whether the defendant is simply a "conduit" through which the plaintiff seeks recovery of damages from the State.

The issue of qualified or state-agent immunity is an issue of law for the Court to decide at the appropriate juncture. See *Phillips v. Thomas*, 555 So.2d 81, 84 (Ala. 1989) ("Whether a particular defendant is engaged in a protected discretionary function and is thereby immune from liability for injuries he causes is a question of law to be decided by the trial court.").

Under the standards announced in *Cranman*, William Johnson is entitled to immunity from the individual capacity claims lodged against him. First, per *Cranman*, the claims stem from the administration of the "contract" to which Gorman & Associates, L.L.C. claims to have been privy. Mr. Johnson's actions with respect to Plaintiffs were all connected to the alleged "contract" and the work/activities associated with the same. This dovetails precisely with the factors considered by courts (e.g., *Alabama Dept. of Environmental Management v. Town of Lowndesboro, supra*), such as (i) the fact that Mr. Johnson acted simply as a conduit between Plaintiffs and the agencies involved, and (ii) the nature of the suit and the relief claimed. See, e.g., Plaintiffs' Second Amended Complaint, at ¶ 13 (Claiming that all of Mr. Johnson's activities were "authorized, ordered or done by the defendant agency or the defendants' officers, agents, employees, or representatives while they were actively engaged in the management of the defendants' businesses."). (Doc. No. 22). For examples involving cases based on contract claims, where the courts addressed immunity of State employees both in their official and individual capacities, see *Alabama A & M Univ. v. Jones*, 895 So.2d 867 (Ala. 2004) (oral employment contract); and *Milton v. Espey*, 356 So.2d 1201 (Ala. 1978) (immunity granted to facility director on breach of contract and negligence counts).

*Alabama A & M Univ., supra*, should also be cited to point out that Plaintiffs are not wholly without a remedy. "Because of the sovereign immunity clause, the courts of this state are without jurisdiction to entertain a suit seeking damage . . . for breach of contract against the state.

[Plaintiff's] remedy, if any, is with the Board of Adjustment." 895 So.2d at 874; see also *Medical Laundry Service v. Bd. of Trustees of the Univ. of Alabama, Birmingham*, 840 F.2d 840, 841 (11th Cir. 1988) (discussing Board of Adjustment as appropriate forum to pursue breach of contract claims against State which are not capable of being brought in court), appeal after remand, 906 F.2d 571 (11th Cir. 1990).

Plaintiffs, in fact, availed themselves of their remedy for breach of contract by pursuing a claim with the Board of Adjustment. See Plaintiffs' Second Amended Complaint, at ¶ 20 ("G&A filed a claim with the Alabama Board of Adjustment against [ADECA] for breach of contract and a hearing was expedited on the matter. G&A **prevailed** on the claim and received $105,201 in compensation for work performed.") (emphasis in original) (Doc. No. 22).

In any event, and based on the pleadings filed by Plaintiffs, it is clear that William Johnson is entitled to State-agent immunity from the claims lodged against him in his individual capacity. Mr. Johnson is entitled to State-agent immunity protection because he was a state employee, an agent of the state, and acted at all times by exercising his judgment in executing work responsibilities.

CONCLUSION

WHEREFORE, Defendants respectfully move that this Court exercise necessary discretion to retain jurisdiction over this suit, and then proceed to adjudicate the merits of the Plaintiffs' claims in light of the arguments and legal authorities set forth herein. Defendants ADECA, WIB and William Johnson, in his official capacity, are due to be dismissed because Plaintiffs are prohibited from suing them in Federal Court by virtue of the Eleventh Amendment to the United States Constitution. William Johnson, in his individual capacity, is entitled to

immunity from suit under the doctrine of State-agent immunity, and the claims against him are due to be dismissed, with prejudice.

Respectfully submitted,

s/John P. Kavanagh, Jr.
H. WILLIAM WASDEN (WASDW4276)
*hww@bowronlatta.com*
JOHN P. KAVANAGH, JR. (KAVAJ1011)
*jpk@bowronlatta.com*
Attorneys for Defendants

OF COUNSEL:

BOWRON, LATTA & WASDEN, P.C.
Post Office Box 16046
Mobile, Alabama 36616
Telephone:   251-344-5151
Facsimile:    251-344-9696

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this ___day of  February  , 2006, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Letta Dillard Gorman, Esquire
    Post Office Box 231196
    Montgomery, Alabama 36123
    *lettag@comcast.net*
    *legaleagle1932@aol.com*

    Walter Mark Anderson, IV
    Law Office of Edmondson Anderson
    621 South Perry Street
    Montgomery, Alabama  36111
    *wmaiv@msn.com*

s/John P. Kavanagh, Jr.
COUNSEL
