IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LETTA DILLARD GORMAN ) | |
| INDIVIDUALLY AND ) | |
| Dba/ GORMAN & ASSOCIATES LLC, ) | |
| AND ) | |
| ANNE WARR CURRY, ) | |
| PLAINTIFFS ) | |
| ) | |
| VS. ) | CIVIL ACTION NO. 2:05CV906T |
| ) | DEMAND FOR JURY TRIAL |
| WILLIAM JOHNSON, ) | |
| INDIVIDUALLY AND AS ) | |
| DIRECTOR OF ) | |
| ALABAMA DEPARTMENT OF ) | |
| ECONOMIC AND COMMUNITY ) | |
| AFFAIRS (ADECA), ) | |
| THE ALABAMA WORKFORCE ) | |
| INVESTMENT BOARD, AND ) | |
| FICTITIOUS PARTIES A, B, C ) | |

**PLAINTIFFS' MOTION TO ALTER JUDGMENT**

COMES NOW, the Plaintiffs and move this honorable court pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter its judgment in this matter and provides the following in support thereof:

1. That the basis of the dismissal of the Plaintiffs' action was the court's decision that it lacked subject matter jurisdiction.

2. That the Plaintiffs maintain that there is a federal question as the basis of subject matter jurisdiction.

3. That the responsive pleading submitted by the Plaintiffs argued that the nature of the contract that is complained of being in breach by the Defendants is a federal grant.

4. That every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution. "The powers of the legislature are defined and limited; and that those limits may not be mistaken or forgotten, the constitution is written." Marbury v. Madison, 1 Cranch 137, 176 (1803) (Marshall, C. J.).

5. That in <u>Heart of Dixie</u> the court stated that the same interest in protecting interstate commerce which led Congress to deal with segregation in interstate carriers and the white-slave traffic has prompted it to extend the exercise of its power to other areas including to gambling, Lottery Case, 188 U.S. 321 (1903); to criminal enterprises, Brooks v. United States, 267 U.S. 432 (1925); to deceptive practices in the sale of products, Federal Trade Comm'n v. Mandel Bros., Inc., 359 U.S. 385 (1959); to fraudulent security transactions, Securities & Exchange Comm'n v. Ralston Purina Co., 346 U.S. 119 (1953); to misbranding of drugs, Weeks v. United States, 245 U.S. 618 (1918); to wages and hours, United States v. Darby, 312 U.S. 100 (1941); to members of labor unions, Labor Board v. Jones & Laughlin Steel Corp., 301 U.S. 1 (1937); to crop control, Wickard v. Filburn, 317 U.S. 111 (1942); to discrimination against shippers, United States v. Baltimore & Ohio R. Co., 333 U.S. 169 (1948); to the protection of small business from injurious price cutting, Moore v. Mead's Fine Bread Co., 348 U.S. 115 (1954); to resale price maintenance, Hudson Distributors, Inc. v. Eli Lilly & Co., 377 U.S. 386 (1964), Schwegmann

v. Calvert Distillers Corp., 341 U.S. 384 (1951); to professional football, Radovich v. National Football League, 352 U.S. 445 (1957); and to racial discrimination by owners and managers of terminal restaurants, Boynton v. Virginia, 364 U.S. 454 (1960). The Plaintiffs argue that the same interest is applicable in this instant matter.

6. That "the power of Congress over interstate commerce is not confined to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end, the exercise of the granted power of Congress to regulate interstate commerce. See McCulloch v. Maryland, 4 Wheat. 316, 421." At 118.

7. That in Lopez, the interpretation of the Commerce Clause has changed as our Nation has developed. See Lopez, 514 U. S., at 552-557; id., at 568-574 (Kennedy, J., concurring); id., at 584, 593-599 (Thomas, J., concurring). That decision states that, in the years since NLRB v. Jones & Laughlin Steel Corp., 301 U. S. 1 (1937), Congress has had considerably greater latitude in regulating conduct and transactions under the Commerce Clause than previous case law permitted. See Lopez, 514 U. S., at 555-556; id., at 573-574 (Kennedy, J., concurring).

8. That as observed in Lopez, modern Commerce Clause jurisprudence has "identified three broad categories of activity that Congress may regulate under its commerce power." 514 U. S., at 558 (citing Hodel v.

Virginia Surface Mining & Reclamation Assn., Inc., 452 U. S. 264, 276-277 (1981); Perez v. United States, 402 U. S. 146, 150 (1971)). "First, Congress may regulate the use of the channels of interstate commerce." 514 U. S., at 558 (citing Heart of Atlanta Motel, Inc. v. United States, 379 U. S. 241, 256 (1964); United States v. Darby, 312 U. S. 100, 114 (1941)). "Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." 514 U. S., at 558 (citing Shreveport Rate Cases, 234 U. S. 342 (1914); Southern R. Co. v. United States, 222 U. S. 20 (1911); Perez, supra, at 150). "Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, ... i.e., those activities that substantially affect interstate commerce." 514 U. S., at 558-559 (citing Jones & Laughlin Steel, supra, at 37).

9. That the meaning of the commerce clause was at issue in the 1824 Gibbons vs. Ogden case. Several issues were at stake in defining federalism:

- The definition of commerce - When New York's highest court ruled against Gibbons, defined commerce narrowly as only the shipment of goods, not navigation or the transport of people.

- National government's powers over intrastate commerce – Does the national government have the right to control any commerce within a state's boundaries?

- State government's powers over interstate commerce – Is interstate commerce a concurrent power that states may share with the national government?

In this same decision, John Marshall wrote the majority opinion in the case, an expansive interpretation of the commerce clause that increased the national government's authority over all areas of economic affairs. Marshall defined commerce as all business dealings, not just the transfer of goods, and he ruled that the national government could regulate within states' jurisdiction. On the other hand, interstate commerce is solely the right of the national government.

7. That one of the national governments most important tools for influencing policy at the state and local levels is the federal grant. Congress authorizes grants, establishes rules for how grants may be used, and decides how much control the states have over federal funds.

Federal grants fall into two general types:

- Categorical grants are appropriated by Congress for specific purposes - highway or airport building, welfare, or school lunches. These grants

usually require the state to "match" (put up money) the federal grants, although the matching funds can vary widely. There are hundreds of categorical grant programs, but a few, including Medicaid and Aid to Families with Dependent Children, account for almost 85 percent of total spending for categorical grants. State and local officials complain that these grants are often too narrow and cannot be adapted easily to local needs.

- Block grants consolidate several categorical grants into a single "block" for prescribed broad activities, such as social services, health services, or public education. This type of grant was promoted by Ronald Reagan, and during the early 1980s, Congress consolidated a number of categorical grants into block grants. Later Presidents have advocated that more consolidation occur, but Congress has been reluctant to do so. Block grants give Congress less control over how the money is used, and representative cannot take credit for grants to their particular districts. State governors generally have supported block grants, because they give states wide control of how and where the money is spent. City mayors have tended to oppose them because cities must rely on state governments to determine funding rules and amounts.

Today, even though block grants still exist, Congress is always tempted to add "strings" that set requirements for how federal grants

are to be spent.  As a result, block grants gradually become more categorical, a phenomenon known as "creeping categorization."

8. That this instant case deals with a federal grant from the U.S. Department of Labor to the State of Alabama and its contractual obligations with subcontractors.
9. That the Plaintiffs were identified as subcontractors in the grant.
10. That the basis of this action is that the Plaintiffs' subcontract was breached by the defendants.
11. That there exists a federal question over a violation of the Commerce Clause of the Constitution in the breach of the Plaintiffs' contract as a subcontractor in the federal grant awarded to the Defendants.

WHEREFOR THESE PREMISES CONSIDERED, the Plaintiffs request that the judgment rendered on June 23, 2006 be vacated and the court accept jurisdiction of this matter based on the federal question related to the Constitutional issue.

Respectfully submitted on this the 3rd day of July, 2006.


　　　　　　　　　　　　　　　　　__/s/ Letta Dillard Gorman_____
　　　　　　　　　　　　　　　　　Letta Dillard Gorman